Delma J. GARCIA–MARROQUIN, d/b/a Luckies Bonding Service, Appellant,

v.

## NUECES COUNTY BAIL BOND BOARD, Appellee.

No. 13–97–881–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1999.

 
 

Delma J. Garcia–Marroquin, Corpus Christi, pro se.

Andrew L. Quittner, Asst. County Atty., Corpus Christi, for Appellee.

Before: Justices DORSEY, CHAVEZ, and RODRIGUEZ.

## OPINION

Opinion by Justice DORSEY.

The central issue in this appeal concerns the district court's jurisdiction over the Nueces County Bail Bond Board ("the Board"). Delma J. Garcia–Marroquin, a licensed bondsman doing business under the name "Luckie's Bonding Service," filed suit against the Board complaining that the Board's accounting procedures were inaccurate, preventing the Board from fairly enforcing a statutory requirement that bondsmen maintain a ten-to-one ratio of bonds outstanding to collateral property.[1] When she filed her original complaint, the Board had recently sent Garcia–Marroquin a letter requiring her to provide proof that she was in compliance with the 10:1 ratio. She sought injunction, damages and declaratory relief. The trial court issued a temporary injunction prohibiting the Board from "directly or indirectly" closing Garcia–Marroquin's bonding company or any other bonding company in Nueces County until providing the court with an accurate accounting.

Less than five days after that injunction was signed, the Board sent another notice of suspension to Garcia–Marroquin, this time citing her failure to provide the Board with proof that she maintained title policy insurance on her collateral property.

---

1. The Bail Bond Act states that no bondsman may execute bail bonds that in the aggregate exceed 10 times the value of the property held as security on deposit with the county. *See* Tex.Civ.Stat.Ann. art. 2372p–3, § 6(g) (Vernon Supp.1999). If a bondsman exceeds this limit, the Board must suspend his license immediately, without the notice or opportunity to be heard provided for in other sections of the Act. *See id.* at § 10.

Garcia–Marroquin filed another petition seeking damages, declaratory and injunctive relief, complaining that the Board's imposition of the title policy insurance requirement was beyond the scope of its authority. She also complained that the Board's action violated the previously entered injunction, and included a cause of action for a de novo appeal of the Board's decision under the Bail Bond Act. After hearing, the court entered another injunction that specifically prohibited the Board from suspending Garcia–Marroquin's bail bonding license until final resolution of this case.

After entry of the two injunctions, the suit lay dormant for seven months. Then, Garcia–Marroquin sought further court intervention because her bonding license was due to expire and she did not believe the injunctions in place would prohibit the Board from refusing to renew her license.[2] In fact, she had received a letter from the Board near the time her license was up for renewal that required her to provide proof of title policy insurance as a condition of renewal. Again, Garcia–Marroquin sought injunction. Her petition requesting this relief set off the last flurry of pleadings ultimately resulting in the trial court dissolving the injunctions and dismissing the suit.

The Board filed a plea to the jurisdiction and a motion to clarify which injunctions were in force and what their effect was. After conducting a hearing, the trial court dissolved both injunctions. The Board then filed a motion for ruling on the question of jurisdiction. Two weeks after dissolving the injunctions, the court heard this motion. The Board argued that the district court had no jurisdiction over this suit because Garcia–Marroquin had failed to exhaust her administrative remedies. Holding that a "final ruling" from the Board was a jurisdictional prerequisite, the court dismissed the entire suit.

### Issues Presented

Garcia–Marroquin presents four issues on appeal. First, she contends that the trial court erred in dissolving the injunctions. Second, she contends that the trial court erred by dismissing her suit for lack of jurisdiction. Third, she contends that the trial court erred in dismissing her suit without addressing all issues in her pleadings. Finally, she contends that the trial court improperly dismissed her action with prejudice. Because our resolution of the jurisdictional issue renders the others moot, we only address the issues concerning lack of jurisdiction and dissolution of the injunctions.

### Causes of Action at Issue

In order to assess whether the district court had subject matter jurisdiction, we determine what causes of action were pending from examining Garcia–Marroquin's pleadings. She filed three petitions under various titles in this suit.[3] She added new causes of action in all petitions, but did not replead causes of action from her prior petitions. When pleadings are improperly titled, we look to the substance of the plea for relief to determine the nature of the pleading, not merely at the form of title given to it. *See* TEX.R.CIV.P. 71; *State Bar v. Heard*, 603 S.W.2d 829, 833

---

**2.** While the injunctions clearly prohibited the Board from suspending her license, they did not specifically prohibit the Board from refusing to renew it.

**3.** In her first petition entitled, "Appeal and Sworn Complaint Seeking Declaratory Relief, Injunctive Relief, and Damages," Garcia–Marroquin complained of the Board's accounting procedures. In her second petition entitled, "Plaintiff's Original Petition for Trial De Novo, Temporary Restraining Order, and Temporary Injunction," she complained of the Board's lack of authority to impose the title policy insurance requirement. She did not incorporate the improper accounting procedure claims in this petition. Nine months later, Garcia–Marroquin filed her "first amended" petition seeking protection from the Board's failing to renew her license. She requested declaratory and injunctive relief, and sought damages, but did not replead all prior causes of action.

372

(Tex.1980). We find that Garcia–Marroquin intended all the petitions to be supplements rather than amendments and treat them accordingly. Combining the three petitions, we find that Garcia–Marroquin adequately pled the following causes of action:

(1) Cause of action for damages based on the Board's alleged faulty accounting procedures;

(2) Cause of action for damages based on the Board's suspension of her license for failure to provide proof of title policy insurance;

(3) Cause of action for injunctive relief based on the Board's alleged faulty accounting procedures;

(4) Cause of action for injunctive relief based on the Board's suspension of her license due to her failure to provide proof of title policy insurance— seeking to enjoin the Board both from suspending her license on that basis and from failing to renew her license on that basis;

(5) Cause of action for declaratory judgment regarding the Board's alleged faulty accounting procedures;

(6) Cause of action for declaratory judgment regarding the Board's authority to require proof of title policy insurance; and

(7) Cause of action for de novo appeal of the Board's suspension of her license based on her failure to provide proof of title policy insurance.

### Statutory Structure and Powers of County Bail Bond Boards

We also must look to the statute creating and empowering the bail bond board to determine whether the district court has jurisdiction to grant injunctive, monetary or declaratory relief against the Board. The bail bond board is a county entity created by the same statute it implements. *See* TEX.CIV.STAT.ANN. art. 2372 p–3, § 5(a) (Vernon Supp.1999). The statute is designed to regulate the business of executing bail bonds and requires a person to obtain a license in order to execute bail bonds. *See id.* at §§ 1–2. The statute sets out in detail the procedure for licensing, eligibility requirements, conditions upon licenses, provisions for termination, revocation, renewal and suspension of licenses, etc. *See generally* TEX.CIV.STAT. ANN. art. 2372p–3 *et seq.* A county board is created for each county with a population over 110,000. *See id.* at § 5(a).

The Board is vested with the power to administer and enforce the Bail Bond Act, to supervise and regulate all phases of the bonding business and to create rules necessary to implement the Act. *See id.* at § 5(f)(1). While granted the general authority to make and enforce rules it deems necessary to implement the Bail Bond Act, the county bail bond boards cannot create additional requirements for obtaining licenses to write bail bonds. *Compare id.* at § 5(f) (stating that besides the powers and duties enumerated in the statute, the board has the powers and duties to exercise powers incidental or necessary to the administration of the Act, to supervise and regulate all phases of the bonding business and enforce the Act within the county, and to prescribe and post any rules necessary to implement the Act) *with Texas Fire & Cas. Co. v. Harris Co. Bail Bond Bd.*, 684 S.W.2d 177, 178 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) (holding a local rule of the Harris Co. Bail Bond Board requiring a $100,000.00 security deposit invalid because it imposed additional burdens on bail bond applications when the statutory minimum deposit is $5,000.00); *Bexar Co. Bail Bond Bd. v. Deckard*, 604 S.W.2d 214, 216 (Tex.Civ.App .—San Antonio 1980, no writ) (same).

The Act gives expiration and renewal requirements for licenses, and provides for their refusal, suspension and revocation. *See id.* at § 10. The board has the duty to conduct hearings and investigations and make determinations regarding the issuance, refusal, suspension, or revocation of licenses to bondsmen. *Id.* at § 5(f)(2).

The Act details the procedure for suspension and revocation of licenses. *See* Tex. Civ.Stat.Ann. Art. 2372p–3, § 6(g) (Vernon Supp.1999). The board must provide the bondsman with notice of a hearing to suspend or revoke his license specifying what portion(s) of the Act the bondsman is charged with violating. *See id.* at § 10(a)(b). The hearing, which must be recorded, must afford the bondsman an opportunity to be heard and to present and confront witnesses. *See id.* at § 10(c)–(e). However, when a bondsman fails to maintain the proper ratio of security deposit to bonds outstanding, the Board is required to suspend the bondsman's license immediately, without a hearing. *See id.* at § 10(f).

The Act also provides for court review of a board's order revoking, suspending or refusing to issue a license. *See id.* at § 11. The appeal must be taken within thirty days after written notice of the suspension, revocation or refusal by filing a petition in a district court in the county. *See id.* The appeal is *de novo,* like proceedings appealed from justice court to county court. *See id.* If no appeal is taken, the board's action becomes final. Further, the Act requires that "the decision of the board shall have full force and effect pending the determination of the appeal." *Id.*

We now turn to the question of whether the trial court had jurisdiction over these claims.

### Standards Governing Subject Matter Jurisdiction

■ Subject matter jurisdiction concerns the kinds of controversies a court has the authority to resolve. *See Davis v. Zoning Bd. of Adjustment,* 865 S.W.2d 941, 942 (Tex.1993). The requirement that a court have subject matter jurisdiction is mandatory—never presumed nor capable of being waived. *See Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 442–44 (Tex.1993). Subject matter jurisdiction requires the party bringing suit to have standing, that there be a live controversy between the parties, and that the case be justiciable. *See State Bar v. Gomez,* 891 S.W.2d 243, 245 (Tex.1994). The lack of subject matter jurisdiction renders any judgment void, not merely voidable. *See Mapco, Inc. v. Forrest,* 795 S.W.2d 700, 703 (Tex.1990) (orig.proceeding). If a trial court lacks subject matter jurisdiction, it has no choice but to dismiss the suit. *See American Pawn & Jewelry, Inc. v. Kayal,* 923 S.W.2d 670, 672 (Tex.App.—Corpus Christi 1996, writ denied).

■ A trial court's lack of subject matter jurisdiction is fundamental error and may be raised the first time on appeal. *See Texas Ass'n of Bus.,* 852 S.W.2d at 445. The question of whether a trial court has subject matter jurisdiction is a question of law reviewed by this court de novo. *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998). We must construe the petition in favor of the pleader and, if necessary, review the entire record to determine if any evidence supports the district court's jurisdiction to hear the cause. *See Tex. Ass'n of Bus.,* 852 S.W.2d at 446; *Gibson v. Waco Indep. Sch. Dist.,* 971 S.W.2d 199, 200 (Tex.App.—Waco 1998, no pet.); *see also* W. Wendell Hall, *Standards of Appellate Review in Civil Appeals,* 21 St. Mary's L.J. 865, 870 (1990). Unless the pleadings demonstrate the absence of jurisdiction, the court assumes it has jurisdiction over the case. *See Peek v. Equipment Serv. Co.,* 779 S.W.2d 802, 804 (Tex.1989); *Harris v. Victoria Indep. Sch. Dist.,* 972 S.W.2d 815, 818–19 (Tex.App.—Corpus Christi 1998, n.p.h.).

### A. Causes of Action for Damages

■ We hold that the district court had jurisdiction over Garcia–Marroquin's causes of action for damages. The Board argues that the trial court was without jurisdiction because Garcia–Marroquin did not present her claims first to the commissioner's court as required by statute. *See* Tex. Local Govt.Code Ann. § 81.041(a) (Vernon 1999). Because we find that section 81.041(a) is a notice provision rather

than a jurisdictional provision, we disagree.

Section 81.041(a) states that "[a] person may not sue on a claim against a county unless the person has presented the claim to the commissioners court and the commissioners court has neglected or refused to pay all or part of the claim." *See id.* The Board argues that a litigant who fails to comply with this statute fails to invoke the district court's jurisdiction. However, the supreme court has squarely held that 81.041(a) is a notice requirement and not a jurisdictional prerequisite. *See Essenburg v. Dallas County,* 988 S.W.2d 188, 189 (Tex.1998).

The proper remedy for a plaintiff's failure to comply with a notice statute is abatement. *Cf. County of Bexar v. Garcia,* 974 S.W.2d 107, 111 (Tex.App.—San Antonio 1998, no pet. h.). In a motion to abate, the defendant may challenge the plaintiff's pleadings by alleging facts outside the pleadings that prove the suit cannot go forward in its present condition. *See America Online, Inc. v. Williams,* 958 S.W.2d 268, 272 (Tex.App.—Houston [14th Dist.] 1997, no pet.). The defendant asks the court to suspend the suit until the plaintiff has corrected this defect. *See id.* In granting abatement, the trial court gives the plaintiff the opportunity to cure the defect. *See Speer v. Stover,* 685 S.W.2d 22, 23 (Tex.1985). Only if the plaintiff fails to correct the defect after abatement should the trial court dismiss plaintiff's suit on those grounds.

Because the Board never requested abatement, we hold that it waived its right to demand notice under section 81.041(a). *Cf. Hines v. Hash,* 843 S.W.2d 464, 469 (Tex.1992). A request for abatement must be made while the purposes of the notice provision—*i.e.,* to aid settlement and avoid litigation—are still viable. *See County of Bexar,* 974 S.W.2d at 109–10. Thus, unless a defendant requests abatement with or very soon after filing his answer, he can waive his right to notice.

*See id.* The Board had the duty to request a hearing and offer evidence that entitled it to abatement. *See Bernal v. Garrison,* 818 S.W.2d 79, 82 (Tex.App.—Corpus Christi 1991, no writ). The motion was not made to the trial court, no hearing on abatement was conducted, and no evidence was admitted. Thus, the Board did not meet its burden. Moreover, even if Garcia–Marroquin had failed to comply with section 81.041(a), abatement, not dismissal, would have been the proper remedy. Accordingly, we REVERSE that portion of the trial court's order and REMAND this issue to the trial court for further proceedings.

### B. Causes of Action for Injunctive Relief

We also hold the trial court had jurisdiction over Garcia–Marroquin's suits for injunction against the Board. The Board argues the trial court was without jurisdiction for two reasons. First, the Board argues that because the Bail Bond Act specifies that all Board decisions shall remain in effect during any appeal, the district court had no jurisdiction to enjoin the Board while this "appeal" was pending. *See* Tex.Civ.Stat.Ann. Art. 2372p–3, § 11 (Vernon Supp.1999). Second, the Board argues that the court was without jurisdiction because Garcia–Marroquin failed to exhaust her administrative remedies. We hold that exhaustion of administrative remedies was not a jurisdictional prerequisite for any of Garcia–Marroquin's causes of action except one, and thus, the section of the Bail Bond Act precluding injunction during an appeal is inapplicable.

The district and county courts have general jurisdiction to hear suits for injunction. *See* Tex. Const. art. V, §§ 8, 16; Tex.Civ.Prac. & Rem.Code Ann. § 65.021(a) (Vernon 1997). Several Texas courts have implicitly recognized the district court's jurisdiction over suits for in-

junction against county bail bond boards.[4] To be entitled to an injunction, a plaintiff must show (1) that a wrongful act occurred (*i.e.*, that the plaintiff has a cause of action against the defendant); (2) that the plaintiff will likely succeed on the merits of his cause of action; and (3) that the plaintiff will likely suffer harm. *See Castaneda v. Gonzalez*, 985 S.W.2d 500, 502 (Tex.App.—Corpus Christi 1998, no pet.); *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex.1993). The "probable harm" element has three components. The plaintiff must show that the harm is imminent, that the injury would be irreparable, and that the plaintiff has no other adequate legal remedy. *See Henderson v. KRTS, Inc.*, 822 S.W.2d 769, 773 (Tex.App.—Houston [1st Dist.] 1992, no writ); *accord Long Island Owner's Assoc., Inc. v. Davidson*, 965 S.W.2d 674, 689 (Tex.App.—Corpus Christi 1998, pet denied).

 The Board argues that the trial court had no jurisdiction because Garcia–Marroquin failed to exhaust her administrative remedies under the Act. The general rule is that where a statute creates an administrative remedy available to plaintiff, the plaintiff must first exhaust his administrative remedy before the district court has subject matter jurisdiction over the dispute. *See Gibson*, 971 S.W.2d at 200; *City of Odessa v. Barton*, 939 S.W.2d 707, 710 (Tex.App.—El Paso 1997), *rev'd on other grounds* 967 S.W.2d 834 (Tex.1998); *Harris County Appraisal Dist. v. Dincans*, 882 S.W.2d 75, 77 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *accord Essenburg v. Dallas County*, 988 S.W.2d 188, 189 (Tex.1998). Several exceptions to the doctrine of exhaustion have been recognized. "If irreparable harm will be suffered and if the agency is unable to provide relief, the courts may properly exercise their jurisdiction in order to provide an adequate remedy." *Houston Fed'n of Teachers, Local 2415 v. Houston Indep. Sch. Dist.*, 730 S.W.2d 644, 646 (Tex.1987); *see generally Jones v. Dallas Indep. Sch. Dist.*, 872 S.W.2d 294, 296 (Tex.App.—Dallas 1994, writ denied) (listing exceptions to the doctrine of exhaustion of administrative remedies). Moreover, Texas courts have long held the doctrine inapplicable if the action complained of was taken without authority or in violation of a statute. *See Freeport Indep. Sch. Dist. v. Common Sch. Dist. No. 31*, 115 Tex. 133, 141–42, 277 S.W. 97, 99 (1925); *Palmer Publ'g Co. v. Smith*, 130 Tex. 346, 349, 109 S.W.2d 158, 159 (1937); *Nueces County v. Nueces County Civil Service Com'n*, 909 S.W.2d 597, 598 (Tex.App.—Corpus Christi 1995, no writ). Also, the requirement of exhaustion of administrative remedies generally has been held inapplicable to questions of law. *See Grounds v. Tolar Indep. Sch. Dist.*, 707 S.W.2d 889, 892 (Tex.1986); *see also Cooper v. St. Paul Fire & Marine Ins. Co.*, 985 S.W.2d 614, 616 (Tex.App.—Amarillo 1999, no pet.).

Certain statutes providing administrative remedies expressly require a plaintiff to exhaust those remedies before seeking judicial review of an agency decision. *See* TEX.LAB.CODE ANN. § 408.001 (Vernon 1996) (workers' compensation actions); TEX.GOVT.CODE ANN. § 554.006 (Vernon Supp.1999) (whistleblower actions). Some courts have held that when a statute does not make the exhaustion requirement mandatory, administrative remedies merely provide another option for redress or recourse. *See Bennett v. Cash America Int'l, Inc.*, 982 S.W.2d 620 (Tex.App.—Houston [1st Dist.] 1998, no pet. h.) (con-

---

4. *See Castaneda v. Gonzalez*, 985 S.W.2d 500, 504 (Tex.App.—Corpus Christi 1998, no writ) (reversing a trial court's order refusing to temporarily enjoin the sheriff from enforcing rules against bail bondsmen and remanding suit to the trial court with instructions to enter a temporary injunction); *Dallas County Bail Bond Bd. v. Mason*, 773 S.W.2d 586, 587 (Tex.App.—Dallas 1989, no writ) (where district court entered an injunction against bail bond board in suit appealing denial of bail bond license); *Dallas County Bail Bond Bd. v. Stein*, 771 S.W.2d 577, 579 (Tex.App.—Dallas 1989, no writ) (where trial court entered injunction against bail bond board in suit challenging a board rule).

struing the Texas Pawnshop Act). The Bail Bond Act does not make exhaustion of administrative remedies mandatory. *See* Tex.Rev.Civ.Stat.Ann. art. 2372p–3 *et seq.* (Vernon Supp.1999). Thus, if the legislature intended Section 11 of the Bail Bond Act to be the sole and exclusive remedy, it is by implication only. While this court would not extend its holding to rule that exhaustion is never required under the Bail Bond Act, we hold that in this case it was not required for two reasons.

 First, the statute does not expressly require exhaustion. Second, we are not convinced that an appropriate administrative remedy is provided by the Bail Bond Act under these facts. We hold that when a litigant challenges the statutory authority of a bail bond board to take certain actions, the district court has jurisdiction to enter an injunction against the board. We further hold that when a bail bondsman challenges a particular bail board decision, he must first exhaust his administrative remedies under the Bail Bond Act. We hold that a district court has no jurisdiction over a suit against a bail bond board where the administrative remedy is clearly appropriate and the plaintiff has not exhausted it prior to filing suit.

Where the primary issue in a case involving a county bond board is a factual determination of whether or not the bondsman violated a provision of the Act, the remedy provided by the Act is clearly appropriate. For example, a bondsman who is accused of violating section 9(b)(8) of the Act has an appropriate remedy. That section prohibits bondsmen from soliciting business in any building where prisoners are processed or confined. *See* T ex.Rev. Civ.Stat.Ann. art. 2372p–3, § 9(b)(8) (Vernon Supp.1999). The Act requires the Board to notify the bondsman of the specific charges of violations of the Act at least ten days prior to holding a hearing on the matter. *See* Tex.Rev.Civ.Stat.Ann.

art. 2372p–3, § 10(a)–(c) (Vernon Supp. 1999). The Board is required to hold a hearing allowing the bondsman to present and challenge witnesses which must be recorded and the record made available to the bondsman. *See id.* at § 10(d)–(e). If the bondsman is not satisfied with the fact determination made by the Board, he may then file suit in district court. *See id.* at § 11.

 However, when the primary issue in a case against the bail bond board involves a question of law such as the scope of the board's authority or the constitutionality of their procedures, the appropriateness of the administrative remedy provided under the Act is not so clear. We hold that where the appropriateness of the administrative remedy under the Bail Bond Act is not clear to the trial court from the allegations in the plaintiff's petition, exhaustion of administrative remedies is not a jurisdictional prerequisite and injunction is available. In determining whether the Bail Bond Act remedy is clearly appropriate, a district court should consider whether the question involved only matter of law,[5] whether the board has the ability to grant the relief requested; and whether the agency is uniquely or better qualified than the district court to resolve the dispute. If the court determines that the administrative remedy is clearly appropriate under these factors, exhaustion is required. However, when the court determines that the appropriateness of the Bail Bond Act remedy is unclear, its jurisdiction is not preempted and it must entertain the suit against the board. We now turn to the question of whether the district court had jurisdiction over Garcia–Marroquin's two causes of action for injunction.

### 1. Injunction for Alleged Faulty Accounting Procedures

**5.** This includes actions which challenge the Board's statutory authority or the constitu-

tionality or legality of the Board's action.

■ The Board argues that it did not issue a final order with regard to Garcia–Marroquin's suit related to the accounting procedures. Apparently, the Board contends that Garcia–Marroquin should have made a statutory appeal to the decision suspending her license for failing to maintain the 10:1 ratio. Because a Bail Bond Act appeal is inappropriate in this situation, we hold that the trial court has jurisdiction over Garcia–Marroquin's cause of action for injunctive relief. She attached to her petition for injunction the written notice of suspension she received from the Board. Thus, the Board had taken action and a present controversy existed. The Board was not required to hold a hearing before suspending her license for failing to maintain the 10:1 ratio. Thus, appeal to the district court was her only recourse for contesting the factual basis of that decision.[6]

■ Finally, Garcia–Marroquin's suit sought to enjoin the Board from suspending her license until it corrected its accounting procedures. That is different than seeking reversal of the Board's decision to suspend her for violating the 10:1 rule. While the Board would be required to reverse that decision if Garcia–Marroquin prevailed on her cause of action in the injunction suit, reversal of the Board decision is not the primary relief she sought. She sought to have the Board enjoined from conducting its business in a manner that unfairly deprives her of a property right. As such, we find the administrative remedy inappropriate. Accordingly, the portion of the trial court's order dismissing this cause of action is REVERSED and REMANDED.

### 2. Injunction for Title Policy Insurance Requirement

■ The issue of the trial court's jurisdiction over Garcia–Marroquin's claim for injunction prohibiting the Board from enforcing its title policy insurance requirement presents different concerns. This action is a challenge to the Board's authority, and the administrative remedy is inappropriate. Thus, exhaustion was not required. Because this cause of action seeks injunction against unauthorized Board action, involves only questions of law and no disputed facts and because the statutory remedy does not afford appropriate relief, we hold the district court had jurisdiction over this action. The issue that would have been determined at the administrative hearing was whether or not Garcia–Marroquin had maintained title policy insurance during the relevant time periods. However, she does not dispute those facts but rather challenges the Board's authority to impose the requirement in the first place. Therefore, the administrative remedy was not appropriate. Further, while the Board does have the "power" to declare one of its own rules outside the scope of its authority, requiring a litigant to request an agency to do that before seeking judicial review is both redundant and nonsensical. Thus, we find that the district court improperly dismissed the injunction cause of action related to the title policy insurance requirement, and therefore, RE-VERSE the order dismissing this cause of action and REMAND to the trial court for further proceedings.

### C. Causes of Action for Declaratory Relief

■ We also hold that the trial court had jurisdiction over both Garcia–Marroquin's causes of action for declaratory relief. She sought declaratory judgments declaring that (1) the accounting proce-

---

6. We note that Garcia–Marroquin did not style this cause of action as a Bail Bond Act appeal. The Board argues both that this action is not ripe because the Board had *not yet made a decision* on the suspension, and that as a Bail Bond Act appeal *from an adverse Board decision,* the provision in the Act re-

quiring the Board's decision to have full effect during appeal should apply to defeat injunctive relief. However, the Board repeatedly stated to the trial court that it had, in fact, suspended Garcia–Marroquin's license. The Board cannot have it both ways.

dures used by the Board were unfair and contradictory, and (2) the Board had no authority to require title policy insurance.[7] A declaratory judgment is available to a litigant to obtain a judicial definition of the rights, status, or legal relationships of the parties to a real controversy before a wrong has actually been committed. *See* TEX.CIV.PRAC. & REM.CODE § 37.002(b); *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 713 (1945). While the Declaratory Judgments Act does not confer upon trial courts jurisdiction to render advisory opinions, a declaratory judgment is appropriate where the judgement will actually resolve the controversy between the parties. *See* TEX.CIV.PRAC. & REM.CODE § 37.002–.008 (Vernon 1997); *Texas Ass'n of Bus.*, 852 S.W.2d at 444.

▬▬▬ The boundary of a court's jurisdictional limits to render declaratory judgments is the rule prohibiting a court from rendering an advisory opinion. An advisory opinion is an opinion rendered where there is no justiciable controversy. *See Patterson v. Planned Parenthood of Houston, Inc.*, 971 S.W.2d 439, 444 (Tex. 1998). A justiciable controversy is one in which a real and substantial controversy exists involving a genuine conflict of tangible interests and not merely a theoretical dispute. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 37.001 (Vernon 1997); *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex.1995). The relief sought in a declaratory judgment action must finally and actually solve the dispute between the parties. In contrast, "[t]he distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties." *Texas Ass'n of Business*, 852 S.W.2d at 444.

▬▬▬ The availability of other legal remedies does not divest a court of jurisdiction to hear an action for declaratory judgment. *See Standard Fire Ins. Co. v.*

*Fraiman*, 514 S.W.2d 343, 346–47 (Tex. Civ.App.—Houston [14th Dist.] 1974, no writ). Similarly, exhaustion of administrative remedies is not required where the action seeks declaratory judgment concerning the validity or applicability of an agency rule. *See Railroad Com'n v. ARCO Oil and Gas*, 876 S.W.2d 473, 487–79 (Tex.App.—Austin 1994, writ denied); *Texas Dept. of Health v. Texas Health Enterprises, Inc.*, 871 S.W.2d 498, 508 (Tex.App.—Dallas 1993, writ denied). Finally, courts may intervene in administrative agency proceedings and provide declaratory relief when the agency is exercising authority beyond its statutorily conferred powers. *See Nuchia v. Woodruff*, 956 S.W.2d 612, 616 (Tex.App.—Houston [14th Dist.] 1997, writ denied).

We find that both Garcia–Marroquin's causes of action for declaratory judgment are particularly appropriate for declaratory relief. Garcia–Marroquin adequately pled a justiciable controversy by alleging that the Board had suspended and/or failed to renew her license on the two contested grounds. We hold that both causes of action for declaratory judgment were soundly within the trial court's jurisdiction. Thus, that portion of the trial court's judgment dismissing Garcia–Marroquin's causes of action for declaratory relief is REVERSED, and those causes of action are REMANDED to the district court for further proceedings.

### D. Cause of Action for Bail Bond Act Appeal

▬▬▬ In her second petition, Garcia–Marroquin sought a trial de novo in the district court appealing the Board's decision suspending her license for failing to comply with the title policy insurance requirement. As previously mentioned, the Bail Bond Act provides for de novo review of any board order revoking, suspending,

---

**7.** The Board did not address the issue of the trial court's jurisdiction over the declaratory actions in its brief, but instead, asked this court to hold the title policy insurance requirement valid as a matter of law. We are without jurisdiction to rule on a declaratory judgment action which the district court has dismissed for lack of jurisdiction.

or refusing to issue a license. *See* Tex.Civ. Stat.Ann.Art. 2372p–3, § 11 (Vernon Supp. 1999). However, Garcia–Marroquin filed this appeal in the district court before exhausting her administrative remedy by attending the hearing, challenging the Board's evidence, and awaiting a final order from the Board revoking or suspending her license. When the administrative remedy is sought, the statute must be followed. We find that the trial court was without jurisdiction to hear this de novo appeal because she failed to exhaust her administrative remedies. Accordingly, we AFFIRM that portion of the trial court's order dismissing plaintiff's cause of action for a statutory de novo appeal of the Board's decision suspending her license for failing to maintain title policy insurance.

### *Dissolution of the Injunctions*

■■■■■ The second broad complaint Garcia–Marroquin makes is that the trial court erred in dissolving the injunctions. We disagree. This court is strictly limited to reviewing whether the trial court has clearly abused discretion in an appeal of an order dissolving a temporary injunction. *See Davis v. Huey,* 571 S.W.2d 859, 861 (Tex.1978). The decision to dissolve a temporary injunction is a matter lying within the broad discretion of the trial court. *See Desai v. Reliance,* 813 S.W.2d 640, 641 (Tex.App.—Houston. [14th Dist.] 1991, no writ). Our review is limited to the narrow question of whether the trial court's action constituted a clear abuse of discretion. *See Desai, supra; State v. Friedmann,* 572 S.W.2d 373, 375 (Tex.Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.). The burden of proof is on the litigant who attacks the court's action. *See GXG Inc. v. Texacal Oil & Gas, Inc.,* 882 S.W.2d 850, 851 (Tex.App.—Corpus

Christi 1994, no writ). All reasonable presumptions are indulged in support of the trial court's judgment. *See id.* The trial court enjoys broad license in interlocutory injunctive rulings. *See id.*

Garcia–Marroquin failed to show an abuse of discretion. The injunctions were plagued with numerous problems including overbreadth and defects in form. In fact, they were both, arguably, void for failing to contain mandatory language and for failing to set a bond amount. *See* Tex. R.Civ.P. 683, 684; *see also Fasken v. Darby,* 901 S.W.2d 591, 593 (Tex.App.—El Paso 1995, no writ) (holding temporary injunction void where it failed to identify reasons injunction was proper and reasons for irreparable harm if injunction not granted); *Moreno v. Baker Tools, Inc.,* 808 S.W.2d 208, 210 (Tex.App.—Houston [1st Dist.] 1991, no writ) (holding injunction order not setting forth specific reasons for issuance void); *see also Lancaster v. Lancaster,* 155 Tex. 528, 291 S.W.2d 303, 308 (1956) (temporary injunction not requiring a bond from plaintiff void). We find the trial court was well within its discretion, and AFFIRM its order dissolving these injunctions. We also AFFIRM that portion of the trial court's order dismissing the cause of action for a Bail Bond Act de novo appeal, REVERSE the trial court's order dismissing all remaining causes of action in plaintiff's suit for lack of jurisdiction, and REMAND all remaining issues to the trial court for further proceedings in accordance with this opinion.[8]

---

**8.** We note that the trial court's order dismissing Garcia–Marroquin's case was entitled "Judgment," and stated that plaintiff would take nothing by her suit, all costs would be borne by party incurring them, and "judgment be taken in favor of Defendant." When a court dismisses a case, the order should be

drafted so that it dismisses the suit and does nothing else. If the order purports to make any decision on the merits, it is reversible error. *See Alvarado v. Magic Valley Elec. Co-op, Inc.,* 784 S.W.2d 729, 733 (Tex.App.—San Antonio 1990, writ denied). The statement, "plaintiff take nothing by her suit," consti-

tutes a decision on the merits. *See De La Garza v. Express–News Corp.,* 722 S.W.2d 251, 253 (Tex.App.—San Antonio 1986, no writ). Because we have already reversed the trial court's dismissal, we need not rule on this issue. Likewise, we do not reach the question of whether the trial court erred by dismissing all issues in Garcia–Marroquin's pleadings.